Elston v. County of Kane Mr. Thompson. Good morning and may it please the court. My name is Brad Thompson and I represent plaintiff appellant Urija Elston. The district court in this case erred as to three issues. First, the court erred in finding that as a matter of law, defendant Demeter was not acting within the scope of his employment during this incident. Next, the court erred in granting summary judgment to appellee Kane County on the basis that plaintiff did not name the Kane County Sheriff's Office as a defendant. And third, the court abused its discretion in denying plaintiff leave to amend his complaint in order to add the Kane County Sheriff's Office as a party. Counsel, why did you wait so long to try to amend your complaint? The district court said it was two years you had been on notice that the Sheriff's Office should have been named. Well, it was two years since we had initially filed our complaint and that the case that appellee relies on, which is Klingler, was not decided until October of 2017, which was over a year after we filed our complaint and actually after we filed our first amended complaint. And it was just a few short months after that that plaintiff first sought leave to amend the complaint. So the two-year point was not from the time that the law was clear. And in fact, there were district court cases prior to Klingler that said that the Sheriff's Office was not a necessary party. So your theory was that even though the Sheriff's Office might be the local public entity in 9-102, that that was a formality because it was the county of Kane that was on the hook for the judgment? That's correct. Now, in addressing the issue of scope of employment, the court reviews summary judgment decisions de novo. And here the district court improperly based its ruling on its own interpretations and inferences based on the facts. And based on the facts of this case, a reasonable jury could find for the plaintiff and summary judgment should have been denied. The court looks to state law when assessing scope of employment claims, and the Illinois Supreme Court has clearly held that it's generally inappropriate to grant summary judgment when scope of employment is at issue. The question whether summary judgment is appropriate as a matter of procedure is determined by forum law, not by state law. Substantive doctrines are determined by state law. Procedures are determined by forum law. If the state of Illinois abolished summary judgment tomorrow morning and said that every case goes to a jury, that would not require a federal court to send every case to a jury. Understood, Judge. This is very well established. Understood, Judge. As to the issue of scope of employment and the state law interpretations of scope of employment, this court has also looked at that as a very fact-intensive analysis. And this court has held that it's a particularly challenging fact-intensive analysis when the defendant is a law enforcement officer. But we have never held that it's inappropriate for summary judgment, and so it still has to satisfy the standard. A reasonable jury would have to be able to resolve that scope of employment question in your favor. And I mean, he was with his family. He wasn't in uniform. He was outside of his jurisdiction. He said he just snapped. Yes. However, this court did hold in Javier v. Milwaukee that it framed the issue as whether or not one was, quote, acting as a cop. And here, the facts show that Defendant Demeter was doing exactly that. He detained plaintiff in order to have him arrested for allegedly violating the law. He displayed his badge. He displayed his gun. He called 911 for assistance. And in calling 911, he identified himself as a police officer. And further, he testified that throughout taking these actions, he understood himself to be acting within his rights as a police officer. And meanwhile, plaintiff knew that defendant was a police officer, understood him to be acting as one during this encounter, and even stated, I can't do anything. You're a cop. Based on those facts, a reasonable jury could find that Defendant Demeter was, in fact, quote, acting as a cop. And in looking at state law as to the precise definition of scope of employment, the case law does not give an exact definition but looks to three general criteria. First, look whether the conduct is the type one is employed to perform. Second, whether conduct occurs within the general authorized time and space limits. And third, whether it is enacted, at least in part, by a purpose to serve the master. And here, all three criteria are met. As to the first element, using force to detain a suspect is precisely the type of conduct that a law enforcement officer is employed to perform. And second, he grabbed him by the neck, he took him to the ground, and he pulled his arms behind his back as if he was going to handcuff him. When the father shows up, he admits he overreacted or something or other. Yes, he made some statement like, I just snapped. However, Apelli doesn't cite any cases that a law enforcement officer who testifies or makes a statement that they snapped is somehow outside the scope of employment. Well, maybe he thought he was. I don't know. He's a different, as the judge pointed out, he's a different place than where he has authority. He had a badge. And how is this serving the master, to jump to the third factor? He was acting to enforce the criminal laws of the state of Illinois. The criminal law that permitted the use of offensive language or profanity? Well, he testified that he was intending to take him into custody for disorderly conduct, which would be a breach of the peace. And so therefore, he was enforcing the criminal laws of the state of Illinois, which is to serve the interest of the Kane County Sheriff's Office. And to the second element, the fact that he was technically outside the boundaries of Kane County, the question under the law is whether it's in the general area and whether or not it is so far beyond the authorized limits to take it beyond the scope of employment. And here the facts show that it was not. It was actually quite close to Kane County. It was in the neighboring county. And it was in the city of Aurora, which has overlapping jurisdiction with Kane County. Why was he where he was, the police officer? Why was he there? Why was he proximate to this kid? He was at the park with his family observing a soccer game. Okay. And what was this other kid doing? Was he in another game nearby or something? He was playing basketball close by, and he and his friends were bantering towards one another and using profanity on occasion. Yeah. Being nasty teenagers or something. And he's not happy. Apparently not. But now we're talking about he was intending to, I guess, what, put him under arrest or something? He was intending to detain him and called the 911 in order to have law enforcement officers come up to assist him to place the plaintiff under arrest. Because these kids were using foul language in a basketball game. Correct. He happened to be nearby. Correct. That was what he was intending to do, was have the plaintiff arrested for that. And based on these facts, a reasonable jury could determine that these criteria are met and therefore this case should not have been decided at summary judgment and should have gone to a jury. Counsel, can I ask you a question about what provision of Illinois law is applicable here? It seems like the district court assumed that it was 9-102 in the Tort Immunity Act. I'm wondering whether, if at all, 5-5-1002 comes into play. It's the indemnity of the sheriff or deputy. Do you know the provision that I'm talking about? I do know the provision you're talking about. And that is something that Appelli raised for the first time in their brief on appeal. The district court, our understanding was that it was under 9-102. Yeah. And that we were operating under that statute. That's the statute that we were pursuing indemnification under. And does it matter to you? Does it matter to your case? I mean, both of them have kind of a scope of employment thing. Under 5-1002, there would be a problem of the deputy having to give notice to the county, etc. But can they both be applicable? Did you have a choice of which to pursue? Or did you choose the right one? Did you choose the wrong one? Our position is that we chose the proper one. And there are other issues with 10-102 that the Appelli raises regarding willful misconduct. Right. However, we would argue that willful misconduct and the way that we pled the complaint in terms of using the terms willfully and maliciously, these are terms of art that are not necessarily identical. And we were following under some of the other cases where 9-102 was the indemnification statute for similar cases, including the district court case Klingler that the Appelli's rely on in terms of a number of their issues. Could you have relied on 5-1002? I don't have the exact answer on whether we—I believe we could have, but that's not what we did. And we didn't have an opportunity to fully brief that issue before the district court. Okay. But our position is that we could have pursued that. Now, in terms of indemnification, the Kane County was named because, as Judge referenced earlier, it is the entity that would be ultimately responsible. And case law has held that, therefore, in their required party. Now, Kane County argues that that's only for official capacity. Can you say I don't see why Kane County would itself ever be a required party where the employee is not its employee, at least if we're relying on 10-9102, which talks about paying tort judgments for which it or an employee is liable, right? The deputy sheriff was not an employee of Kane County. He was an employee of the sheriff's office. Correct. Kane County would be liable only because the county has to provide the budget for the sheriff's office. Correct. And that suggests that Kane County is not a proper party. The sheriff's office is a proper party. And, well, there we have it. Well, the principle under Carver still applies here, that Kane County— No. Carver holds that the sheriff's office is a proper party, and often a necessary party. That's why the name of the case is Carver v. Sheriff of LaSalle County. Yes, and the county was not named initially in that, and that was the issue that was to be addressed. And where the county is ultimately the potential indemnifier— It's not an indemnifier, as I understand Illinois law. The county provides the budget for the sheriff's office, and it has a legal duty to provide the budget. The sheriff's office pays the judgment of an employee acting within his official capacity. If the county failed to provide the sheriff's office with the money needed to pay a judgment, that is, failed to appropriate the money to which the sheriff's department is entitled, there might need to be supplementary procedures. But that's not an indemnity, right? The problem, as Judge Barrett has noticed, is that you're using an indemnity statute in a case dealing with state budgetary considerations. It's as if you were run down on the street by a Postal Service officer, and you filed a lawsuit against the Congress of the United States, because Congress appropriates the money to pay for such judgments. But you don't sue the Congress, you sue the Postal Service. Here, you don't sue the county, you sue the sheriff's office. Understood, and that the county would ultimately be the entity providing the funds, which is why— Just like Congress appropriates the money to pay judgments against the United States, but is not itself a proper party. However, even if that ruling by the district court was correct, summary judgment to appellee Kane County was not the appropriate remedy. If the sheriff's office was a necessary party, the district court could have ordered them to be added as a party at any point in the lawsuit. They didn't ask to be a party. The county said they had to be, and you didn't add them when you could. That's back to the initial question. Why do you wait two years to add the county— sorry, to add the sheriff's office long after the county has said the sheriff's office needs to be a party, long after discovery is closed? Because the law was not clear on that point at that time. Well, my sense is you pay your money and you take your choice. If you're willing to gamble on the law, you can do that, but you can't gamble on the law, lose, and then say, let's go back and start from scratch. Most lawyers want to set things up so that a gamble on the law is not necessary. But if you do elect to gamble on the law, you didn't have to pay even a higher fee to name the sheriff's office as a defendant. If you do elect to gamble on the law and you lose, then you lose. That's just the way litigation works. Understood, and I see I'm out of time. Mm-hmm. Thank you, Mr. Thompson. Thank you. Ms. Brady. Good morning, and may it please the Court. I'm Assistant State's Attorney Erin Brady, and I represent the Appali the County of Kane. Your Honors, before I begin in earnest, I want to add to the conversation that was just had about the naming of the Kane County Sheriff's Office as well as the county in order to invoke indemnification. An important point to be had in that discussion is the idea that these are individual capacity claims only against Mr. Demeter. Carver v. LaSalle and Section 9102 stand for the principle that a county or a government entity may be liable for official capacity claims. That's not what's been alleged by the appellant here. Your Honors, I'd like to begin by stating that what this case is is a case about a man who, in his own words, just lost it. That man just also happens to be a Kane County Sheriff's deputy. Brian Demeter was on his own time on a purely family matter in DuPage County at a children's soccer game when he got into the altercation with the appellant. He grabbed the appellant by the neck after the appellant refused to stop using foul language while playing basketball. I think we're aware of the facts, and they're not what matters to the outcome here. Noted, Judge. Let's just address the question whether it should have been the Sheriff's Office really rather than Kane County, who was the official defendant. So the district court determined that summary judgment was appropriate on that basis because the Sheriff's Office hadn't been named as a defendant. There is no respondeat superior liability for 1983 claims against a government entity. You would have to have the Monell official policy or custom type claim. That's not been alleged here. Why are we talking about 1983? This is a question about what state law requires. Who is the right party to pay a given judgment? Yes, Judge. But in that case, I would direct the court's attention back to Carver v. LaSalle, where this court spoke directly to the Illinois Supreme Court on that issue, and it relayed back to official capacity claims. Had the Kane County Sheriff's Office been named as a party, the Kane County Sheriff's Office could have participated in that type of discovery that would have necessarily been involved with that type of a claim. What was the prejudice to permitting an amendment two years later? Well, Judge Barrett, the prejudice that would come would be the type of discovery that would have to be conducted if a Monell type claim was alleged. But I don't understand. Would it have been a Monell type claim? Because maybe I'm misunderstanding the Tort Immunity Act, but it looks to me like the Tort Immunity Act, and it was my understanding that this was the purpose of it, does create, even though 1983 does not, but effectively this Tort Immunity Act does create some respondeat superior liability, according to which the Sheriff's Office would pay a judgment entered against an individual. Am I misunderstanding that? You're not misunderstanding it, Judge Barrett. What I'd like to add, though, is your reference earlier to the Illinois County's Code, and that speaks to the type of indemnification that would come on an individual capacity claim, which is alleged here. 9102 applies only to official capacity claims, again, as held by this court in Carver v. LaSalle when analyzing a state indemnification claim. So there are no individual capacity claims that are ever brought under 9-102? Judge, it's our position, based on this court's ruling in Askew  that an individual capacity claim is the responsibility of that individual officer himself and not one of the government generally. Except insofar as the government assumes responsibility for it. Correct, Judge. If the government chose to indemnify or step in on a claim like that, they certainly could. Your Honor, I would argue, though, that it's not appropriate in this case where the only claims alleged are an individual capacity claim for an individual who is off-duty and outside the jurisdiction that he's authorized to act in when the events took place. Well, if you were to sue the Sheriff's Office, the department, I guess, they have a budget that's appropriated probably somewhere else, and they may have something in the budget in cases like this. I don't know what they do, but things like that can happen. And so they may even have part of their budget where they say, well, we have to have that part of the budget. And maybe the money was there, maybe not. Well, and so the county has a general liability insurance policy, and that's why Carver v. LaSalle went so in-depth as to you have to sue both the Sheriff's Office and the county, and that was echoed again by the district court in Klinger in 2017. If you want to pursue an official capacity claim against a county employee who is the employee of an independently elected official, you've got to name both the elected official and the county itself. The county in that case is just a nominal party, and the Sheriff's Office and any official capacity claims would have to be defended. But that's correct. That is the significance of that pleading style. So it's an elected official, it's a sheriff, I guess. And so that's what puts it into that bracket, I guess. Is that right? The Sheriff's Office would have to turn to the county to fund the judgment. If it hasn't already done it, right? Sure. The United States has a judgment fund. Money is appropriated into the judgment fund and paid out. There isn't a separate appropriation for every tort judgment rendered. Does Kane County, or the Sheriff's Department of Kane County, have a judgment fund? There is a separate insurance liability fund. We're self-insured up to a certain amount, and then beyond that is the responsibility of an outside insurance carrier. When you say we, are you speaking of the Sheriff's Office? The county. I'm asking about the Sheriff's Office. Is there a judgment fund to take care of judgments against the Sheriff's Office and its employees? Not to my knowledge, Judge. I would like to touch briefly on the scope of employment analysis, just to hit the most important points that the district court noted. All three factors of the restatement have to be met in order for an individual to be determined to be acting under the scope of employment. Here, the district court found that factors two and three were not met, specifically that the employee was acting outside of the time and space limitations of his job, and because the conduct was not of the kind that was done to serve the master. The appellant does not dispute the fact that the case law suggests that it has to be the actual employer whose conduct is being, or whose interest is being served, and not some other entity with a related law enforcement purpose. Appellant's argument suggests that since Mr. Demeter was trying to arrest the appellant and hold on to him for the Aurora Police Department, that that somehow imputes liability or service to the Kane County Sheriff's Office. The Kane County Sheriff's Office does not have an interest in enforcing laws outside of its own boundaries and its own jurisdictions, especially by its off-duty employees. The final issue that I'd like to address is the district court's denial of the appellant's motion for leave to amend. There's a high standard for discretion and deference given to the district court, and the district court here held that the appellant delayed and to amend would allow undue prejudice towards the Kane County Sheriff's Office. I've spoken a little bit on what type of prejudice that would be. It would be most likely a protracted Monell-type discovery that would necessarily involve depositions and document discovery in related cases of similar constitutional violations, if there are any. I must say I don't understand that at all. Since this liability is liability based on a state statute, what is the prejudice in adding the Sheriff's Office when it's state law, not 1983, that would produce liability for Kane County? What we're talking about there, Judge, is that there would still have to be a respondeat superior claim alleged against the Sheriff's Office, and we don't have that here. You know, I agree that scope of employment is the issue that would be most outcome determinative in this case, and it's why that we've spoken. And the district court thinks it's already resolved, the scope of employment issue, on the existing record. We agree that it is, Judge. You know, where no reasonable jury could so determine, that's how it's going to go, and it's been held that way in a number of cases cited by both parties in both state and in federal courts. So again, what's the prejudice? I mean, I agree that the plaintiff delayed in amending the complaint. It's just hard for me to see what the prejudice was in permitting the amendment. You know, there are different types of defenses or theories of relief that could be alleged. I would argue that the prejudice is most likely going to be a discovery one. There may be different types of... But discovery on what? I mean, as Judge Easterbrook said, the claim wasn't being changed. The plaintiff never said he was going to assert a Monell claim against the Sheriff's Office. This was just a question of, if you're relying on the Tort Immunity Act, just making sure the right party was there for purposes of payment and responsibility. Sure, Judge, and I don't mean to quarrel with Your Honor at all, but I do believe that there would be additional discovery burdens. The Sheriff's Office may have, you know, different policies that they would want to produce in discovery and review, and this is just, you know, hypothetical. But again, the district court also found that the appellant delayed and delayed in an undue manner in failing to ask for leave to amend when they had been on notice of the pleading issues for nearly two years at that point. And that explanation, you know, that Clinger wasn't decided until 2017, while Carver v. LaSalle goes back to, I believe, 2003. And so we disagree that there was any question that an official capacity or an individual capacity claim would require naming both the Sheriff's Office and the county under which the office operates. Unless there are any other additional questions, I would just like to conclude that as Mr. Demeter testified, he lost his cool. He wasn't acting as a Kane County Sheriff's deputy when he grabbed the appellant by the neck and took him to the ground while he was off duty and outside his duty. This doesn't have anything—go ahead. We are not a trier of fact. Yes, Judge. Both sides stand up and repeat their factual assertions, but they don't get resolved here. Yes, Judge. Well, then I'll wrap up by respectfully requesting that this court uphold the district court's grant of summary judgment and its denial for the motion for leave to amend. Thank you. Thank you very much, Ms. Brady. Anything further, Mr. Thompson? Agreed. That's assured. I'll give you 30 seconds. Thank you. To clarify, plaintiff was not seeking to file a Monell claim, and so that argument— Well, that's obvious. Would you be willing to agree that you could take no further discovery if the sheriff's office were added? Yes, we would agree to that. Okay. And finally, that there have been cases where individual claims have been brought under 9-102, both with counties and municipalities, and Wilson v. City of Chicago is one of those that Seventh Circuit held back. Thank you. Okay. Thank you very much. The case is taken under advisement.